# HALL & LAMPROS, LLP

ATTORNEYS AT LAW

300 Galleria Parkway
Suite 300
Atlanta, Georgia 30339

February 22, 2023

David J. Smith, Clerk of the Court
United States Court of Appeals
for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303

   Re: Appellants' FRAP 28(j) Letter in *Austin v. Glynn County, Georgia*, No. 21-10162-AA

To the Clerk of Court:

  Under FRAP 28(j), Appellants supplement their argument at pages 19-20 of their brief with *Krage v. Macon Bibb County Georgia*, No, 22-10061, 2022 WL 16707109 (11th Cir. Nov. 4, 2022) (attached). In *Krage*, this Court applied the *Manders* factors to precisely the function at issue in this appeal—a Georgia Sheriff's compensation decisions.

  *Krage* is unpublished, and this Court should not follow its analysis for two reasons:

**1.**  ***Krage's* analysis of the second *Manders* factor (degree of state control) is a significant departure from existing law.**

  *Krage* held that this factor weighs in favor of immunity because the sheriff's authority to make compensation decisions is "derived from his State-delegated authority." *Id.* at *3. *Krage* is the first Eleventh Circuit case to find this factor weighs in favor of immunity because of State-delegated authority alone—i.e., where the State has no identifiable specific means of control over the function at issue. For instance, in *Pellitteri v. Prine*, 776 F.3d 777, 781-82 (11th Cir. 2015), this Court held the State "exercised a great deal of control" over the function at issue (hiring and firing of deputies) and listed the specific means of control (*e.g.,* certification process, entrance exam, etc.) Here, there is no such state control over compensation decisions. To hold that the control factor can turn only on the fact that the sheriff's authority is state-delegated—where there is no specific state control over the function at issue—is a significant departure from the existing law.

**2.**  ***Krage* applies *Manders* factor three (source of funds) contrary to this Court's *Abusaid* decision.**

  *Krage* concedes that the county funds the deputies' salaries but still held that this factor weighs in favor of immunity because "the State of Georgia requires counties to set the sheriff's

**HALL & LAMPROS, LLP**

Clerk of the Court
-Page 2-
February 22, 2023

---

total budget." In *Abusaid v. Hillsborough County Bd. of County Com'rs*, 405 F.3d 1298, 1311-12 (2005), however, this Court rejected the argument that this factor should turn on state control of the budgeting process, holding instead that the "consideration central" to this prong was that the sheriff's funds are derived from the counties.

Sincerely,

**Hall & Lampros, LLP**

Patrick J. Hannon

cc:   Richard K. Strickland
      Emily R. Hancock

Krage v. Macon Bibb County Georgia, Not Reported in Fed. Rptr. (2022)

USCA11 Case: 21-10162     Document: 38     Date Filed: 02/22/2023     Page: 3 of 6

2022 WL 16707109
Only the Westlaw citation is currently available.
United States Court of Appeals, Eleventh Circuit.

Justin KRAGE, Aiden Renfroe, Officer Marcus Baker, Jeremy Robinson, Jesse Thompson, et al., Plaintiffs-Appellants,
v.
MACON BIBB COUNTY GEORGIA, Sheriff David Davis, Defendants-Appellees,
Bibb County Sheriffs Office, Defendant.

No. 22-10061
|
Non-Argument Calendar
|
Filed: 11/04/2022

Appeal from the United States District Court for the Middle District of Georgia, D.C. Docket No. 5:19-cv-00321-MTT

**Attorneys and Law Firms**

Stephen M. Welsh, Buzzell Welsh & Hill, LLP, Macon, GA, for Plaintiffs-Appellants.

Christopher Ross Conley, Gordon Grant Greenwood, Duke R. Groover, Kathryn S. Willis, James-Bates-Brannan-Groover, LLP, Macon, GA, for Defendant-Appellee Macon Bibb County Georgia.

Virgil L. Adams, Dawn Maynor Lewis, Adams Jordan & Herrington, Macon, GA, for Defendant-Appellee Sheriff David Davis.

Before Lagoa, Brasher, and Edmondson, Circuit Judges.

**Opinion**

PER CURIAM:

*1 Plaintiffs -- twenty sworn deputies with the Bibb County Sheriff's Office [1] -- appeal the district court's grant of summary judgment in favor of Bibb County Sheriff David Davis. Plaintiffs asserted against Sheriff Davis, in his official capacity, claims for violation of the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"). The district court concluded that Sheriff Davis was entitled to Eleventh Amendment immunity. No reversible error has been shown; we affirm.

**I.**

Plaintiffs filed this civil action against Sheriff Davis, in his official capacity, and against Macon-Bibb County, Georgia. Pertinent to this appeal, Plaintiffs alleged that Sheriff Davis's policy for compensating deputies for on-call duty violated the FLSA. As part of their official duties, each Plaintiff was required to spend some time working "on call." [2] Plaintiffs were paid only for on-call time spent actually responding to calls and received no compensation merely for being on call. Plaintiffs contend that -- under the FLSA -- they are entitled to compensation for time spent "standing by" while on call.

The district court granted summary judgment in favor of Sheriff Davis on Eleventh Amendment immunity grounds. In making that ruling, the district court determined that Sheriff Davis acted as an "arm of the State" when making compensation decisions about on-call time. The district court also concluded that Macon-Bibb County was entitled to summary judgment on Plaintiffs' FLSA claims because the County was no "joint employer" within the meaning of the FLSA. The district court then declined to exercise supplemental jurisdiction over Plaintiffs' state-law contract claims. This appeal followed. [3]

**II.**

We review *de novo* a district court's grant of Eleventh Amendment immunity. *See Pellitteri v. Prine*, 776 F.3d 777, 779 (11th Cir. 2015).

The Eleventh Amendment bars federal courts from entertaining suits against a state without the state's consent. *See Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (*en banc*). The Eleventh Amendment applies not only to the State itself, but also to a defendant who acts as an "arm of the State." *Id.*

*2 We decide on a case-by-case basis whether a defendant acts as an "arm of the State" for Eleventh Amendment immunity purposes, focusing on "the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* In *Manders*, we identified these four factors that courts consider in deciding whether an entity acts as an "arm of the State" when performing a particular function: "(1) how state law defines

the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. Whether a defendant entity is an "arm of the State" is a question of federal law; but we look to state law to determine the relationship between the entity, the State, and the county. *Id.*

A. Particular Function

As an initial matter, Plaintiffs challenge the way the district court characterized the "particular function" examined in the district court's Eleventh-Amendment-immunity analysis. Plaintiffs say the district court focused mistakenly on Sheriff Davis's general policy of requiring deputies to work on-call shifts, instead of focusing on Sheriff Davis's decision not to pay deputies for stand-by time while on-call. We disagree.

The language of the district court's order makes clear that the district judge understood that the "particular function" central to the immunity determination was Sheriff Davis's failure to pay Plaintiffs for time spent on-call, waiting to be called in. The district court considered properly whether Sheriff Davis acted as an "arm of the State" when he carried out that particular function. That the district court also discussed -- in the context of examining the second *Manders* factor -- Sheriff Davis's broader authority to establish rules and restrictions governing on-call duty constitutes no error. Sheriff Davis's level of control over all aspects of his deputies' on-call duties and responsibilities informed the district court's assessment about the degree of control the State maintains over the pertinent function: Sheriff Davis's decision about compensation for on-call duty.

B. First Factor: How State Law Defines the Entity

The first *Manders* factor weighs in favor of immunity when the authority to engage in the pertinent function is derived from the State. *See Pellitteri*, 776 F.3d at 780. In *Manders*, we determined -- after an in-depth review of Georgia law -- that "sheriffs in Georgia derive their power and duties from the State, are controlled by the State, and counties cannot, and do not, delegate any law enforcement power or duties to sheriffs." *Manders*, 338 F.3d at 1313. We stressed that a sheriff's office operates as a constitutional office "separate" and "independent" from the county and from the county's governing body. *See id.* at 1310, 1311, 1319.

We have also observed that "Georgia's Constitution ... expressly prevents counties from controlling or affecting the sheriff's office *or the personnel thereof.*" *See Pellitteri*, 776 F.3d at 780 (emphasis added) (citing GA. CONST. art. IX, § 2, para. 1(c)(1)). In *Pellitteri*, we concluded that, under Georgia law, a sheriff's authority to employ personnel -- including making hiring and firing decisions -- is a power derived from the State. *Id.* (noting that "sheriffs alone [have] the power to hire their deputies" and that such deputies are "considered employees of the sheriff and not the County").

Guided by our decisions in *Manders* and in *Pellitteri*, we conclude that Sheriff Davis's authority to make employment decisions about how his personnel are compensated for time spent on-call is a power derived from the State. Accordingly, this first factor weighs in favor of immunity.

C. Second Factor: Degree of Control Maintained by the State

Under the second *Manders* factor, we consider whether Georgia vests control over the pertinent function in the State or in the county.

**\*3** We have said that "the State of Georgia exercises substantial control over a sheriff's personnel decisions, especially in the hiring and firing of deputies." *See Pellitteri*, 776 F.3d at 781. In reaching that conclusion, we considered it significant that a sheriff makes personnel decisions to help him carry out his own constitutional duties: duties delegated to him by the State. *See id.* at 782; *see also Manders*, 338 F.3d at 1313 (noting that Georgia sheriffs "directly represent[ ] the sovereignty of the State and "perform[ ] state functions for the sovereign in enforcing the laws and keeping the peace").

Here, Sheriff Davis's constitutional duty to enforce the laws and to ensure public safety necessitated him having on-call deputies available to respond to emergencies. Sheriff Davis maintained exclusive control over the rules, restrictions, and requirements governing those on-call duties. Like the personnel decisions involved in *Pellitteri*, Sheriff Davis's policies relating to on-call duties -- including his decision about how deputies would be compensated for working on-call shifts -- thus derived from his State-delegated authority.

Georgia law also makes clear that the county had no degree of control over Sheriff Davis's compensation decisions. Georgia's Constitution provides expressly that Georgia counties have no legislative power or authority over a sheriff's office, including over the "salaries thereof, or the personnel thereof." *See* GA. CONST. art. IX, § 2, para. 1(c)(1).

**Krage v. Macon Bibb County Georgia, Not Reported in Fed. Rptr. (2022)**

USCA11 Case: 21-10162     Document: 38     Date Filed: 02/22/2023     Page: 5 of 6

Against this background, the second *Manders* factor supports a finding that Sheriff Davis acted as an "arm of the State" when he decided how his deputies would be paid for on-call time.

### D. Third Factor: Where the Entity Derives its Funds

The third *Manders* factor -- which looks at the defendant entity's source of funding -- also cuts in favor of immunity for Sheriff Davis. In assessing this factor in the context of Georgia sheriff's offices, we have recognized that Georgia counties "bear[ ] the major burden of providing funds to the sheriff's office, including the salaries of the sheriff and his deputies." See Pellitteri, 776 F.3d at 782; Manders, 338 F.3d at 1323. Nevertheless, we have determined that this factor still weighs in favor of immunity because the State of Georgia requires counties to set the sheriff's total budget and because counties are prohibited from dictating how the sheriff's office uses those funds. See Pellitteri, 776 F.3d at 782-83; Manders, 338 F.3d at 1323-24.

### E. Fourth Factor: Liability for and Payment of Adverse Judgments

The fourth *Manders* factor focuses on who is responsible for adverse judgments against the entity. Here, nothing evidences -- and neither party contends -- that the State of Georgia would be required to pay for an adverse judgment entered against Sheriff Davis in his official capacity. This factors thus weighs against a finding of Eleventh Amendment immunity. See Pellitteri, 776 F.3d at 783.

On appeal, Plaintiffs urge us to treat this fourth factor as outcome determinative. We rejected a similar argument in *Pellitteri*, noting that "the presence of a state treasury drain is likely sufficient but certainly not necessary for a finding of immunity." See Pellitteri, 776 F.3d at 783 n.2; see also Manders, 338 F.3d at 1327 ("Never has the Supreme Court required an actual drain on the state treasury as a per se condition of Eleventh Amendment immunity."). In *Pellitteri*, we concluded that a sheriff was entitled to Eleventh Amendment immunity when -- as in this case -- the first three *Manders* factors weighed in favor of immunity, notwithstanding that the State owed no liability for an adverse judgment against the sheriff's office. See Pellitteri, 776 F.3d at 783.

**\*4** Having considered the pertinent factors and guided by our binding precedent in this area, we conclude that Sheriff Davis acted as an "arm of the State" when he decided how deputies would be compensated for on-call time. Plaintiffs' FLSA claims against Sheriff Davis in his official capacity are thus barred by Eleventh Amendment immunity. We affirm the district court's grant of summary judgment in favor of Sheriff Davis.

AFFIRMED.

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 16707109

---

### Footnotes

1. In 2014, Bibb County, Georgia, and the City of Macon consolidated to form a new unified government: Macon-Bibb County. The name of the Sheriff's Office, however, remains "Bibb County Sheriff's Office."

2. Rules governing the amount of time spent on-call, the required response time, and other restricted activities while on call vary depending on the division to which the deputy is assigned. Plaintiffs were employed as detectives and investigators in different divisions of the Sheriff's Office, including the Traffic Fatality Unit, Criminal Investigations Division, Special Weapons and Tactics Team, Special Investigations Unit, and Crime Scene Investigations-Forensics.

3. Plaintiffs raise no challenge to the district court's grant of summary judgment in favor of Macon-Bibb County or to the district court's dismissal without prejudice of Plaintiffs' state-law claims. These claims are thus not properly before us on appeal.

**End of Document**                                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.